# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHEILA TAORMINA, | : |
| | : |
| Plaintiff, | : |
| | : Case No. _____ |
| v. | : |
| | : Judge: |
| OUTSIDE INTERACTIVE, INC., | : |
| and VELO PRESS, LLC, and | : |
| INGRAM BOOK GROUP LLC, and | : **COMPLAINT FOR** |
| SIMON & SCHUSTER ENTERPRISES, | : **COPYRIGHT** |
| INC., and REDSHELF, LLC, and | : **INFRINGEMENT** |
| BOOKPACK, INC. d/b/a ULYSSES | : |
| PRESS, and OPEN ROAD MEDIA | : |
| HOLDINGS, LLC, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |
| | : |

Plaintiff Sheila Taormina ("Ms. Taormina" or "Plaintiff") through her undersigned counsel, hereby states for her Complaint against Defendants Outside Interactive, Inc. ("OII"), Velo Press, LLC ("Velo"), Ingram Book Group LLC ("Ingram"), Simon & Schuster Enterprises, Inc. ("Simon & Schuster"), RedShelf, LLC ("RedShelf"), Bookpack Inc. d/b/a Ulysses Press ("Bookpack") and Open Road Media Holdings, LLC ("Open Road") (collectively, OII, Velo, Ingram, Simon & Schuster, RedShelf, Bookpack, and Open Road are hereinafter referred to as "Defendants"), with personal knowledge as to Ms. Taormina's actions and upon information and belief as to those of others, as follows:

## NATURE OF THE CLAIMS

1.  Ms. Taormina brings this action for Copyright infringement—both direct and secondary—under The Copyright Act, as amended, 17 U.S.C. § 101, *et seq.*

2.  Ms. Taormina is a veteran of four Olympic summer games from 1996 to 2008 in three events—swimming, triathlon, and pentathlon—and an Olympic Gold Medalist in 1996 in the

4x200 freestyle relay. Drawing on her experience and success, she has written five books about the art of swimming (two of them in two editions) including: (1) *Swim Speed Secrets for Swimmers and Triathletes: Master the Freestyle Technique Used by the World's Fastest Swimmers*; (2) *Swim Speed Workouts for Swimmers and Triathletes*; (3) *Swim Speed Strokes*; (4) *Swim Speed Secrets, 2nd Edition: Master the Freestyle Technique Used by the World's Fastest Swimmers*; and (5) *Swim Speed Workouts for Swimmers and Triathletes: The Breakout Plan for Your Fastest Freestyle, 2nd Edition* (collectively, these books are referred to as the "Copyrighted Works").

3. Ms. Taormina has initiated this action to protect her exclusive rights in the Copyrighted Works, upon which she obtained federal registrations on: (1) May 8, 2012 (Registration No. TX 7-533-972); (2) August 2, 2013 (Registration No. TX 7-765-390); (3) February 24, 2015 (Registration No. TX 8-025-094); (4) November 7, 2018 (Registration No. TX 8-672-935); and (5) July 29, 2019 (Registration No. TX 8-776-494), respectively. True and correct copies of the publicly available registration certificates for the Copyrighted Works are, collectively, annexed hereto as **Exhibit A**.

4. The Copyrighted Works all contained clear, legally sufficient copyright notices in the customary location on the reverse of the title page accessible to all Defendants and, indeed, anyone who opened them.

5. Defendants have all—without authorization from Ms. Taormina—caused, contributed to, or are otherwise responsible for the reproduction, distribution, public display, and/or sale of at least certain of the Copyrighted Works.

6. Ms. Taormina seeks damages, attorney's fees, and all other appropriate relief arising from Defendants' unlawful conduct.

## THE PARTIES

7. Ms. Taormina is an individual who resides in and is a citizen of the State of Florida.

8. Upon information and belief, OII is a Delaware corporation with its principal place of business at 1600 Pearl Street, Boulder, Colorado 80302.

9. Upon information and belief, Velo is a California limited liability company with a principal place of business at 32 Court Street, #2109, Brooklyn, New York, 11201.

10. For clarification, upon information and belief, "Velo Press" is distinct from Velo, and Velo Press existed as an unincorporated imprint of OII, at least, prior to February 23, 2023, at which point Velo (the California limited liability company defined above) was formed. Accordingly, Velo (as defined above) refers only to the California limited liability Company, and OII (as defined above) encompasses and is responsible for any actions of its unincorporated imprint "Velo Press."

11. Upon information and belief, Bookpack is a California corporation with a principal place of business at 32 Court Street, #2109, Brooklyn, New York, 11201.

12. For clarification, upon information and belief "Ulysses Press" is an unincorporated imprint of Bookpack. Accordingly, Bookpack refers to the California corporation (as defined above), and Bookpack encompasses and is responsible for any actions of its unincorporated imprint "Ulysses Press."

13. Upon information and belief, Simon & Schuster is a Delaware corporation with its principal place of business at 1230 Avenue of the Americas, New York, New York 10020.

14. Upon information and belief, Open Road is a Delaware limited liability company with its principal place of business at 180 Maiden Lane, Suite 8A, New York, NY 10038.

15. Upon information and belief, RedShelf is a Delaware limited liability company with its principal place of business at 75 West Jackson Boulevard, Suite 1425, Chicago, Illinois 60604.

16. Upon information and belief, Ingram is a Tennessee limited liability company with a principal place of business at 1 Ingram Boulevard, La Vergne, Tennessee 37086.

## VENUE & JURISDICTION

17. This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(a), and 28 U.S.C. § 1338, subsections (a) and/or (b).

18. Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) because Simon & Schuster and Open Road reside and can be found in this district, and this Court has personal jurisdiction over Simon & Schuster and Open Road for the same reasons.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) and this Court has personal jurisdiction over all Defendants because all Defendants are subject to the Court's personal jurisdiction with respect to this action in accordance with N.Y. C.P.L.R. § 302 because, *inter alia*, all Defendants transact business within New York and/or contract to supply goods or services in New York, and, specifically, Bookpack and Velo have their places of business in Brooklyn, New York.

## FACTUAL BACKGROUND

20. This case arises out of Ms. Taormina's previous contractual relationship with OII.

21. Pursuant to several written publishing agreements (collectively, the "Publishing Agreements")—the earliest of which was effective on or about May 18, 2011—between Ms.

Taormina and Velo Press, OII was the publisher and distributor of Ms. Taormina's books, including the Copyrighted Works.

22. Upon information and belief, at all times relevant to the claims set forth herein, OII was a party to or a successor-in-interest to the Publishing Agreements.

23. Ms. Taormina became dissatisfied with OII's efforts—or lack thereof—relating to promotion and marketing of the Copyrighted Works.

24. Ms. Taormina, as author of the Copyrighted Works, and OII, as their publisher, executed a Reversion of Rights Agreement (the "Reversion Agreement"), effective September 28, 2022, that, *inter alia*, unequivocally terminated the Publishing Agreements and reverted and assigned all rights, worldwide, in the Copyrighted Works to Ms. Taormina. A true and correct copy of the Reversion Agreement is annexed hereto as **Exhibit B**.

25. Under the terms of the Reversion Agreement, OII was obligated to, by September 28, 2022, cease selling the Copyrighted Works and take them out of their catalog and out of print, while still remitting to Ms. Taormina any royalty payments due to her from sales up to the effective date of reversion.

26. No person or entity besides Ms. Taormina had any rights in the Copyrighted Works after September 28, 2022.

**Defendants' Relationships with One Another**

27. Upon information and belief, on or about March 13, 2023, OII sold its so-called "Velo Press" book list to Velo, in an asset purchase for $571,601.46 in cash (the "OII-Velo APA").

28. Upon information and belief, Velo was formed for the specific purpose of effectuating the OII-Velo APA.

29. Upon information and belief, as of the first half of 2023, the "Velo Press" assets transferred in the OII-Velo APA have been treated as an imprint operated by Ulysses Press (which, again, is an unincorporated imprint operated by Bookpack).

30. Upon information and belief, a true and correct copy of the OII-Velo APA is annexed hereto as **Exhibit C.**

31. Upon information and belief, prior to the OII-Velo APA, and until on or about April 24, 2023, Ingram served as a distributor for OII.

32. Upon information and belief, shortly after the OII-Velo APA, on or about April 24, 2023, OII assigned its distribution contracts with Ingram to Velo which was a subsidiary of Bookpack. Upon information and belief, a true and correct copy of this assignment is annexed hereto as **Exhibit D**.

33. Upon information and belief, on or about August 1, 2023, Simon & Schuster took over certain distribution activities from Ingram.

34. Upon information and belief, in or about January 2024, Bookpack/Ulysses Press granted, or purported to grant, certain distribution rights to Open Road.

35. Upon information and belief, RedShelf worked as a sub-distributor for Open Road, at least between on or about January 21, 2024 and September 11, 2024.

36. Upon information and belief, all Defendants have relevant distribution-related relationships with one or more of the other Defendants.

## The Infringement

37. Although OII was obliged by the Reversion Agreement to take the Copyrighted Works out of their catalog and out of print, upon information and belief, it failed to do so.

38. Upon information and belief, OII was obliged by its distribution agreements with Ingram to provide Ingram with at least 30 days prior written notice in the event OII desired to take a work being distributed on its behalf by Ingram out of print.

39. Upon information and belief, OII did not provide notice, written or otherwise, to Ingram of its termination of authorization to publish any of the Copyrighted Works.

40. As a consequence of the failure of notice, Ingram continued to distribute at least certain of the Copyrighted Works, even after the Reversion Agreement became effective, including selling at least 311 copies in the aggregate, including certain of the Copyrighted Works between September 2022 and August 2023.

41. Specifically, upon information and belief, Ingram, at least, sold three of the Copyrighted Works for OII (*Swim Speed Secrets*, first and second editions and *Swim Speed Strokes*, first edition).

42. Upon information and belief, Ingram sold at least certain of the Copyrighted Works for Bookpack and/or Velo, under distribution-related arrangements.

43. Upon information and belief, RedShelf sold at least one copy of *Swim Speed Secrets*, second edition, which, upon information and belief, it received from Open Road Media.

44. Upon information and belief, Bookpack and/or Velo directed Ingram to transfer to Simon & Schuster, at least, copies of at least one of the Copyrighted Works (*Swim Speed Secrets*, second edition).

45. Upon information and belief, RedShelf claims to have received authorization from each of Ingram, Simon & Schuster, and Open Road Media to sell copies of at least one of the Copyrighted Works (*Swim Speed Secrets*, second edition).

46. Upon information and belief, prior to approximately May 2023, Ingram reported to and paid OII in connection with sales of the Copyrighted Works, under distribution-related arrangements.

47. Upon information and belief, after approximately May 2023, Ingram reported to and paid Bookpack in connection with sales of the Copyrighted Works, under distribution-related arrangements.

48. For instance, upon information and belief, on or about August 1, 2023, Simon & Schuster took over distribution of the Copyrighted Works from Ingram, under distribution-related arrangements.

49. Upon information and belief, Simon & Schuster continued to distribute the Copyrighted Works after August 1, 2023, under a distribution arrangement with no authorization from Ms. Taormina to do so.

50. Upon information and belief, RedShelf distributed the Copyrighted Works by the purported authority of Ingram between approximately May 22, 2023, and July 31, 2023, under distribution-related arrangements.

51. Upon information and belief, RedShelf distributed the Copyrighted Works by the purported authority of Simon & Schuster between approximately August 1, 2023, and January 20, 2024, under distribution-related arrangements.

52. Upon information and belief, RedShelf distributed the Copyrighted Works by the purported authority of Open Road between on or about January 21, 2024, and September 11, 2024, under distribution-related arrangements.

53. Upon information and belief, in or about January 2024, Bookpack/Ulysses Press purported to grant Open Road the exclusive rights to distribute the e-book edition of *Swim Speed*

*Secrets for Swimmers and Triathletes: Master the Freestyle Technique Used by the World's Fastest Swimmers*, one of the Copyrighted Works, which Bookpack was not authorized to do.

54. Upon information and belief, Open Road distributed e-book copies of *Swim Speed Secrets for Swimmers and Triathletes: Master the Freestyle Technique Used by the World's Fastest Swimmers*, one of the Copyrighted Works, which Open Road was not authorized to do.

55. All Defendants have been, in some way, responsible for the infringement of Ms. Taormina's exclusive rights in the Copyrighted Works, including by, without authorization or any legal right to do so, reproducing, distributing, publicly displaying, and/or selling them.

56. The infringement described in the preceding paragraphs represents what Ms. Taormina knows, or knows.0 upon information and belief, at this time to have occurred, but does not represent an exhaustive or the definitive description of all infringing activities.

57. Ms. Taormina has been damaged by Defendants' conduct as described herein.

**Ms. Taormina Becomes Aware Of The Infringement & Ongoing Infringement Becomes Plainly Willful**

58. On December 5, 2023, Ms. Taormina first became aware that at least certain of the Copyrighted Works were being distributed without her authorization, and despite the Reversion Agreement which reverted all rights in all of the Copyrighted Works to Ms. Taormina.

59. Ms. Taormina first became aware of the infringement of the Copyrighted Works when Bookpack contacted her regarding royalties due to her for continued sale of the Copyrighted Works.

60. On March 11, 2024, Bookpack received notice of the previous reversion of all rights in the Copyrighted Works to Ms. Taormina.

61. On April 5, 2024, Ms. Taormina notified Sarah Lawton of OII that the Copyrighted Books were still being sold by Bookpack and/or a related entity under distribution-related arrangements.

62. Upon information and belief, on April 8, 2024, Bookpack requested that Open Road cease distributing the Copyrighted Works.

63. On May 20, 2024, Ms. Taormina served a cease and desist letter on OII.

64. On May 20, 2024, Ms. Taormina served a cease and desist letter on Bookpack.

65. On June 26, 2024, Ms. Taormina served a cease and desist letter on Ingram.

66. On September 10, 2024, Ms. Taormina served a cease and desist letter on Simon & Schuster.

67. On September 10, 2024, Ms. Taormina served a cease and desist letter on RedShelf.

68. On September 20, 2024, Ms. Taormina served a cease and desist letter on Open Road.

69. Defendants' conduct has been willful, at least to the extent that it continued or occurred after they became aware, as alleged in the preceding paragraphs, that no Defendants—indeed no person or entity besides Ms. Taormina—had any rights in the Copyrighted Works after September 28, 2022, the effective date of the Reversion Agreement.

70. Specifically, even after receiving notice of Ms. Taormina's rights, OII has denied infringement and refused to provide Ms. Taormina with information about the Copyrighted Works or an accounting.

71. Bookpack has also refused to provide an accounting and has continued infringing conduct even after receiving notice of Ms. Taormina's rights.

## COUNT I
### Direct Copyright Infringement
### (Against Ingram, Simon & Schuster, Bookpack & Open Road)
### (17 U.S.C. § 501)

72. Ms. Taormina hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

73. The actions of Ingram as described herein, including its reproduction, distribution, public display, and/or sale of all five of the Copyrighted Works without authorization, constitute direct copyright infringement under 17 U.S.C. § 501.

74. The actions of Simon & Schuster as described herein, including its reproduction, distribution, public display, and/or sale of at least one of the Copyrighted Works without authorization, constitute direct copyright infringement under 17 U.S.C. § 501.

75. The actions of Bookpack as described herein, including its reproduction, distribution, public display, and/or sale of all five of the Copyrighted Work without authorization, constitute direct copyright infringement under 17 U.S.C. § 501.

76. The actions of Open Road as described herein, including its reproduction, distribution, public display, and/or sale of at least one of the Copyrighted Work without authorization, constitute direct copyright infringement under 17 U.S.C. § 501.

77. Ms. Taormina is the author of the Copyrighted Works.

78. Ms. Taormina owns valid copyrights in the Copyrighted Works.

79. The Copyrighted Works are original books containing copyrightable subject matter, for which copyright protection exists under the Copyright Act.

80. Ms. Taormina has valid copyright registrations for the Copyrighted Works that predate the commencement of the infringement described herein. *See* Exh. A.

81. Since at least September 28, 2022, Ms. Taormina has been the exclusive owner of all rights in the Copyrighted Works.

82. The infringement described herein was willful, committed with full knowledge of Ms. Taormina's rights in the Copyrighted Works.

83. Ingram, Simon & Schuster, Bookpack, and Open Road have illegally obtained profit due to their direct infringement of the Copyrighted Works.

84. As a direct and proximate result of the infringement described herein, Ms. Taormina has been damaged in amount that will be proven at trial, including but not limited to recovery of profits attributable to the infringement under 17 U.S.C. § 504(b) and a full accounting of such profits.

85. Ms. Taormina is entitled to the maximum permissible statutory damages under 17 U.S.C. § 504(c) for Ingram's, Simon & Schuster's, Bookpack's, and Open Road's willful infringement.

86. Ms. Taormina is entitled to her attorney's fees and costs under 17 U.S.C. § 505.

## COUNT II
## Vicarious Liability for Copyright Infringement
### (Against OII, Velo, RedShelf, Open Road, Ingram, Simon & Schuster)

87. Ms. Taormina hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

88. Based upon the actions of OII as described herein, OII is vicariously liable for copyright infringement.

89. Based upon the actions of Velo as described herein, Velo is vicariously liable for copyright infringement.

90. Based upon the actions of RedShelf as described herein, RedShelf is vicariously liable for copyright infringement.

91. Based upon the actions of Open Road as described herein, Open Road is vicariously liable for copyright infringement.

92. Based upon the actions of Ingram as described herein, Ingram is vicariously liable for copyright infringement.

93. Based upon the actions of Simon & Schuster as described herein, Simon & Schuster is vicariously liable for copyright infringement.

94. As alleged herein, Ingram, Simon & Schuster, Bookpack, and Open Road have directly infringed Ms. Taormina's copyrights in the Copyrighted Works.

95. Upon information and belief, OII, Velo, RedShelf, Open Road, Ingram, and Simon & Schuster had the authority to supervise or control the direct infringement described herein.

96. Upon information and belief, OII, Velo, RedShelf, Open Road, Ingram, and Simon & Schuster derived financial gain in connection with the direct infringement described herein.

97. Upon information and belief, OII's, Velo's, RedShelf's, Open Road's, Ingram's, and Simon & Schuster's conduct described herein was and continues to be willful, committed with full knowledge of Ms. Taormina's rights in the Copyrighted Works.

98. As a direct and proximate result of the direct infringement described herein, Ms. Taormina has been damaged in an amount that will be proven at trial, including but not limited to recovery of profits attributable to OII's, Velo's, RedShelf's, Open Road's, Ingram's, and Simon and Schuster's conduct and a full accounting of such profits.

99. Ms. Taormina is entitled to the maximum permissible statutory damages under 17 U.S.C. § 504(c) for OII's, Velo's, RedShelf's, Open Road's, Ingram's, and Simon and Schuster's willful conduct.

100. Ms. Taormina is entitled to her attorney's fees and costs under 17 U.S.C. § 505.

## COUNT III
## Contributory Copyright Infringement
### (Against OII, Velo, RedShelf, Open Road, Ingram, Simon & Schuster)

101. Ms. Taormina hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

102. The actions of OII as described herein constitute contributory copyright infringement.

103. The actions of Velo as described herein constitute contributory copyright infringement.

104. The actions of RedShelf as described herein constitute contributory copyright infringement.

105. The actions of Open Road as described herein constitute contributory copyright infringement.

106. The actions of Ingram as described herein constitute contributory copyright infringement.

107. The actions of Simon & Schuster as described herein constitute contributory copyright infringement.

108. As alleged herein, Ingram, Simon & Schuster, Bookpack, and Open Road have directly infringed Ms. Taormina's copyrights in the Copyrighted Works.

109. Upon information and belief, OII, Velo, RedShelf, Open Road, Ingram, and Simon and Schuster knew or should have known about the direct copyright infringement alleged herein.

110. Upon information and belief, OII, Velo, RedShelf, Open Road, Ingram, and Simon and Schuster materially contributed to the direct copyright infringement alleged herein.

111. Upon information and belief, the contributory infringement described herein was and continues to be willful, committed with full knowledge of Ms. Taormina's rights in the Copyrighted Works.

112. OII, Velo, RedShelf, Open Road, Ingram, and Simon and Schuster have illegally obtained profit due to their contributory infringement of the Copyrighted Works.

113. As a direct and proximate result of the contributory infringement described herein, Ms. Taormina has been damaged in amount that will be proven at trial, including but not limited to recovery of profits attributable to the contributory infringement under 17 U.S.C. § 504(b) and a full accounting of such profits.

114. Ms. Taormina is entitled to the maximum permissible statutory damages under 17 U.S.C. § 504(c) for OII's, Velo's, RedShelf's, Open Road's, Ingram's, and Simon and Schuster's willful contributory infringement.

Ms. Taormina is entitled to her attorney's fees and costs under 17 U.S.C. § 505.

**PRAYER FOR RELIEF**

WHEREFORE, having set forth its claims against the Defendants, Plaintiff demands judgment in her favor against the Defendants:

1. That Ingram, Simon & Schuster, Bookpack, and Open Road have directly infringed Plaintiff's copyrights;

2. That OII, Velo, RedShelf, Open Road, Ingram, and Simon and Schuster are secondarily liable for the infringement of Plaintiff's copyrights because of their vicarious liability for copyright infringement and contributory infringement;

3. That Defendants be ordered to provide accountings of all profits attributable to any infringing conduct, including Defendants' profits from sales and any other exploitation of the Copyrighted Works;

4. That Defendants be ordered to, at their own expense, provide all remaining copies of the Copyrighted Works to Plaintiff;

5. That Defendants, at their own expense, be ordered to recall the Copyrighted Works from any distributors, retailers, vendors, or other persons or entities that have distributed or received the Copyrighted Work;

6. That OII has breached the Reversion Agreement;

7. Awarding Plaintiff:

    a. Statutory damages in the maximum amount allowable by law; or at Plaintiff's election

    b. Defendants' profits obtained as a result of their infringing conduct, including but not limited to all profits from sales and other exploitation of the Copyrighted Works in such amount as the Court finds to be just and proper; and

    c. Plaintiff's reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505; and

8. Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums; and

9. Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Joseph J. Beglane*
Stephen E. Gillen*
Joseph J. Beglane (Bar ID: 5589734)
BRICKER GRAYDON LLP
312 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 629-2804
(513) 651-3836 (facsimile)
sgillen@brickergraydon.com

Joseph J. Beglane (Bar ID: 5589734)
BRICKER GRAYDON LLP
312 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 621-6464
(513) 651-3836 (facsimile)
jbeglane@brickergraydon.com

*Counsel for Plaintiff*
*Application for admission *pro hac vice* forthcoming

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable.

*/s/ Joseph J. Beglane*
Joseph J. Beglane